IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02835-NYW

BADER L. LEDBETTER,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

        This civil action comes before the court pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c) for review of the Acting Commissioner of Social Security's final decision denying Plaintiff, Bader L. Ledbetter's, application for Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated October 13, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). *See* [#23]. The court has carefully considered the Complaint filed October 17, 2014 [#1], Defendant's Answer filed January 30, 2015 [#9], Plaintiff's Opening Brief filed March 19, 2015 [#13], Defendant's Response Brief filed April 30, 2015 [#14], Plaintiff's Reply Brief filed May 12, 2015 [#15], the entire case file, the administrative record, and applicable case law. For the following reasons, I respectfully reverse and remand the Commissioner's decision.

**PROCEDURAL HISTORY**

On January 30, 2012, Plaintiff Bader L. Ledbetter ("Plaintiff" or "Ms. Ledbetter"), filed Title II and Title XVI applications with an alleged onset date of December 24, 1999.[1] At the time of the alleged onset date, Ms. Ledbetter was 44 years old, had a high school education with two years of college experience, and had no past relevant work experience. [#10-2 at 32-33].[2] These applications were initially denied on June 26, 2012. [*Id.*] Plaintiff thereafter requested a hearing and appeared with counsel before Administrative Law Judge Richard J. Maddigan ("ALJ") on August 8, 2013. [#10-2 at 22-40]. At the hearing, Ms. Ledbetter amended her alleged onset date to January 30, 2012, which resulted in the dismissal of her Title II claim. [#10-2 at 11, 26-27]. The ALJ issued an unfavorable decision as to Plaintiff's Title XVI claim on August 4, 2013, finding that Ms. Ledbetter had not been disabled from the alleged date of the onset of disability through the date of his decision. [#10-2 at 8-20]. On September 16, 2013, Plaintiff filed a "Request for Review of Hearing Decision," which the Appeals Council denied on September 18, 2014. [#10-2 at 1-4]. Ms. Ledbetter thereafter timely filed this civil action.

At the administrative hearing, Plaintiff testified that she suffers from severe depression and anxiety: "I have problems with severe depression where I have problems getting out of bed,

---

[1] Plaintiff originally filed an application for SSI under Title XVI of the Act on January 10, 2006, alleging that she became disabled on December 1, 1999. *See* [#10-2 at 11]. This application was denied on June 13, 2008, due to capacity for substantial gainful activity. [*Id.*] On March 4, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, again alleging that she became disabled on December 1, 1999. This application was denied in October 2006, due to only slight impairment. [*Id.*] Ms. Ledbetter filed a second Title II application on February 18, 2010 with an alleged onset date of December 24, 1999. This application was denied in March 2010, due to insufficient evidence furnished. [*Id.*]

[2] The court uses this designation to refer to the Electronic Court Filing system ("ECF") document number attached to the Administrative Record and the page number of the Administrative Record as it was filed by the Parties. Plaintiff's citations and Defendant's citations similarly refer to the page number of the Administrative Record, or, where applicable, the page number of a brief. *See, e.g.,* [#13 at 1; #14 at 2].

or severe problems with sleep where I don't sleep a lot, and when I don't sleep a lot I have problems with anxiety and panic attacks and then my temper gets really bad." [#10-2 at 28]. Plaintiff further testified that she has trouble functioning in general. She becomes anxious and irritable when she has to fulfill a commitment, does not sleep well, and has trouble with her memory. [#10-2 at 29]. She was receiving treatment from Axis Health Systems at the time. [#10-2 at 28].

In response to the ALJ's skepticism regarding Plaintiff's inability to complete a simple task based on her reported issues, Ms. Ledbetter's attorney represented, "[w]e think the issue isn't here so much that she's so severe she couldn't get herself to work, it's that she would not be able to complete the whole workweek. She would have interruptions that would preclude her from continuing." [#10-2 at 30]. Plaintiff testified that she last worked in a real estate office, that the job did not work out well, she "was there for a few months…[and] quit…[she] just wasn't getting along very well." [#10-2 at 31].

In response to questioning by her attorney, Ms. Ledbetter represented that she struggles with anxiety attacks every day. The sensation feels like a heart attack, including shooting chest pain. [#10-2 at 35-36]. She takes Xanax as a result, and she "[has] to be alone and just kind of relax." [#10-2 at 36]. Plaintiff testified that she has difficulty interacting with other people; she becomes angry and anxious when "people talk, talk, talk to me. I get real short and kind of explosive." [*Id.*] She also suffers from sleep issues and requires medication to fall asleep, including high doses of Trazodone and Temazepam. [*Id.*] Plaintiff represented that the poor quality and lack of sleep causes her a lot of anxiety. She further testified that she has been diagnosed with bipolar disorder. During a manic period, she experiences higher anxiety and anger, which she described as "rage disorder," and she sleeps less. [#10-2 at 37]. These manic

3

periods occur two or three times a week. [*Id.*] During a depressed period, she experiences severe depression, stays in bed and watches television, and generally resists doing anything. [#10-2 at 38]. Ms. Ledbetter testified she has a teenage daughter with whom she has difficulty interacting and who serves as "kind of a trigger," and that their disagreements contribute to her sleeping issues. [*Id.*]

Doris J. Shriver testified as a vocational expert ("VE"). The ALJ first asked the VE whether jobs were available for an individual of Plaintiff's age, who "had no physical limitations, required a position involving low stress, unskilled activities, and contact with supervisors, co-workers, and the general public would not be frequent or prolonged," and who had two years of college. [#10-2 at 32-33]. The VE responded that such jobs exist.[3] The VE specified that, considering an individual who has the ability to perform light work in accordance with a specific vocational preparation ("SVP") of 3, Plaintiff could work as a general clerk, an electronics inspector and tester, or as a file clerk.[4] [#10-2 at 33-34]. The VE then testified that an individual with the ability to perform light work in accordance with an SVP of 2 could work as a housekeeper/cleaner or a production worker. [#10-2 at 34]. In response to the ALJ's inquiry, the VE agreed that none of these jobs would be available for an individual who would be "off task" for 50 percent of the time. [*Id.*]

The ALJ issued his written decision on August 14, 2013, concluding that Ms. Ledbetter had not been disabled for SSI purposes within the meaning of the Act from the amended alleged

---

[3] The ALJ and the VE held an exchange regarding whether Plaintiff's years in college qualified her for semi-skilled work, and decided to consider jobs involving both unskilled and semi-skilled labor. [#10-2 at 32-33].

[4] "SVP refers to the 'time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.)).

onset date of January 30, 2012 through the date of his decision. [#10-2 at 12]. Plaintiff requested review of the ALJ's decision, and her attorney submitted a brief dated September 10, 2013, which the Appeals Council incorporated into the record. [#10-2 at 6]. The Appeals Council denied Plaintiff's request on September 18, 2014. [#10-2 at 1]. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nielson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on October 17, 2014. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). The court may not reverse an ALJ simply because he may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

evidence.") (internal quotation marks and citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

**I.     The ALJ's Decision**

An individual is eligible for SSI benefits under the Act if she is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 1382c(a)(1)(3)(B). The Social Security Disability Insurance Program established by Title II of the Social Security Act, 49 Stat. 622, as amended, 42 U.S.C. § 401 et seq., provides for the payment of disability benefits only to those who have previously contributed to the program and who suffer from a mental or physical disability. *See Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). By contrast, the Supplemental Security Income Program, established by Title XVI of the Social Security Act, 86 Stat. 1465, as amended, 42 U.S.C. § 1381 *et*

*seq.*, provides for the payment of disability benefits based solely on an individual's indigent status and is therefore a need-based program available to claimants independent of their prior social security contributions. *See Bowen,* 476 U.S. at 470. Only Plaintiff's claim for SSI under Title XVI is at issue here.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 416.920(a)(4). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers whether the claimant has a medically severe impairment or combination of impairments, as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 416.909. If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 416.920(a)(4)(iii). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Id.* at 751. The ALJ then compares the RFC to the claimant's past relevant work to determine whether the claimant can

resume such work. *See Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) assessing "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")). "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Id.*

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> …
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain….

*Williams*, 844 F.2d at 751-52. The Commissioner may rely upon the testimony of a vocational expert to satisfy his burden at step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

The ALJ first determined that Ms. Ledbetter was insured for disability through September 30, 2002. [#10-2 at 14]. Next, following the five-step evaluation process, the ALJ determined that Ms. Ledbetter: (1) had not engaged in substantial gainful activity since the amended alleged onset date of January 30, 2012; (2) had severe impairment of affective disorder; and (3) did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). [#10-2 at 15]. At step four, the ALJ found that Plaintiff had an RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: "low stress, unskilled work with no frequent or prolonged contact with supervisors, coworkers, or the general public." [#10-2 at 16]. The ALJ considered Plaintiff's age of 44 years old on the alleged disability onset date, that she had a high school education plus two years of college and is able to communicate in English, the fact that she had no past relevant work experience, and her RFC, and determined that jobs exist in the national economy in significant numbers that Plaintiff can perform. [#10-2 at 18]. Accordingly, the ALJ concluded that Plaintiff was not disabled.

Ms. Ledbetter now claims the ALJ erred on a number of grounds. First, Ms. Ledbetter asserts the ALJ improperly weighed the opinion of her treating physician. Second, Ms. Ledbetter contends the ALJ failed to weigh or explain the weight given to the opinion of the State agency psychological consultant. Finally, Ms. Ledbetter argues the ALJ failed to explain

how he accounted for his step three finding in the RFC assessment. *See* [#13]. The court considers each of these in turn.

## II.     Weight Given to Medical Opinions

Patti Snodgrass, M.D.,[5] Plaintiff's treating psychiatrist, along with Amy Feren, her primary counselor, completed a "Residual Functional Capacity Evaluation (Mental)" on behalf of Ms. Ledbetter in August 2012. [#10-7 at 218-220]. In that evaluation, Dr. Snodgrass opined that Ms. Ledbetter had "marked" limitation in her ability to complete a workday or workweek without interruptions from her psychologically based symptoms and to perform at a persistent pace without interruption. [*Id.* at 219]. She concluded that Plaintiff would be unable to work a traditional work week, and that she would be off task more than half the time. [*Id.* at 220]. Ms. Ledbetter argues that the ALJ failed to attribute the proper weight to Dr. Snodgrass' opinion. Ms. Ledbetter further argues that the ALJ failed to weigh the opinion of the State agency psychological consultant, Dr. Wharry, and erred in elevating Dr. Wharry's opinion over the opinion of Dr. Snodgrass. Defendant contends that the ALJ found that Dr. Snodgrass's opinion was supported by Plaintiff's subjective complaints, rather than by objective, clinical findings; and asserts that Dr. Wharry's conclusion regarding Plaintiff's moderate limitations is consistent with the ALJ's findings.

### A.     Applicable Law

The RFC assessment must consider and address medical source opinions. "[T]he opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to controlling weight when it is well-supported by medically acceptable clinical and laboratory

---

[5] Dr. Snodgrass saw Plaintiff on multiple visits between April 2012 and April 2013 [#10-7 at 208-211, 221-248], and is identified by Plaintiff as her treating physician. Defendant does not contest this designation.

diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (citation omitted). *See* 20 C.F.R. § 416.927(c)(2). If the ALJ determines that the treating physician's opinion is not well-supported, his inquiry at this stage is complete. *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* The opinion is not entitled to controlling weight if the ALJ finds that it is either not well-supported, or not consistent with the other substantial evidence. *Id.*

However, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927." *Watkins*, 350 F.3d at 1300 (quoting Social Security Ruling (SSR) 96–2p, 1996 WL 374188, at *4). If the ALJ does not attribute controlling weight to the treating source's opinion, he should demonstrate his consideration of the following: length of the treatment relationship and the frequency of examination ("[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); the nature and extent of the treatment relationship ("[w]e will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories"); supportability ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion"); consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that

11

opinion"); specialization; and other factors "which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c)(2)-(6). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. *See* 20 C.F.R. § 416.927(c).

Nonetheless, "the assumption that the opinions of a treating physician warrant greater credit than the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration…" *Doyal*, 331 F.3d at 762 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S.Ct. 1965 (2003)). An ALJ may reject medical opinions in the record and reach his own conclusion as to a claimant's RFC, so long as that conclusion is based on substantial evidence. *See Boss v. Barnhart*, 67 F. A'ppx 539, 542 (10th Cir. 2003) ("When a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [source's] reports to see if they outweigh the treating [source's] report, not the other way around") (citation omitted). If an ALJ rejects a treating source's opinion, he must articulate "specific, legitimate reasons" for his decision. *Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) (quotations omitted). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. § 416.927(1), (2); SSR 96–6p, 1996 WL 374180, at *2.

    B.    <u>Application</u>

Plaintiff argues that the ALJ did not follow the two-step analysis for assessing a treating physician's opinion, and that his findings are contradicted by Dr. Snodgrass's opinion. Plaintiff further argues that the ALJ based his finding at step three on Dr. Wharry's opinion that Plaintiff

12

is only mildly limited in maintaining social functioning and moderately limited in maintaining concentration, persistence or pace, thereby improperly elevating Dr. Wharry's opinion over the opinion of Dr. Snodgrass and with no explanation. I agree with Plaintiff that the ALJ did not follow the correct legal standards in considering these two opinions and thus I remand for further proceedings.

In August 2012, Amy Feren, MA LPC, a primary counselor at Axis Health System, where Plaintiff had received treatment, completed a Residual Functional Capacity Evaluation (Mental) (the "Evaluation"), finding that Plaintiff had Bipolar II disorder, she was moderately impaired in several areas of sustained concentration and persistence and adaptation, she was not capable of working a full-time job, and she would be off task at any job more than half of the time. [#10-7 at 218-220]. Dr. Snodgrass signed the Evaluation. [*Id.* at 220]. At step two, the ALJ concluded that he would attribute no weight to the Evaluation, stating only that the Evaluation was "based on [Plaintiff's] statements not on any objective findings." [#10-2 at 15]. In reaching this conclusion, the ALJ recounted Plaintiff's mental health records from March 2012 through February 2013 and noted that Plaintiff was repeatedly observed as alert, pleasant, and cooperative with good eye contact and a clear, goal directed thought process, with fair judgment and insight, and that she had denied any suicidal ideations. [*Id.* at 14-15].

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that medically equals the severity of a listed impairment. [*Id.* at 15-16]. He determined that she has mild restriction in activities of daily living, mild difficulties with social functioning, and moderate difficulties with concentration, persistence and pace. [*Id.* at 16]. He further found that Plaintiff had experienced no episodes of decompensation of extended duration. [*Id.*] The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all

exertional levels with the following limitations: "low stress; unskilled work with no frequent or prolonged contact with supervisors, coworkers, or the general public." [*Id.* at 16]. The VE testified that jobs exist in the national economy that could accommodate the limitations as described by the ALJ, but that all of those jobs would be eliminated if he applied Dr. Snodgrass's limitation that Plaintiff would "be off task for 50 percent of the time." [*Id.* at 34-35]. Although the ALJ did not mention Dr. Wharry's opinion expressly, his findings at step three reflect Dr. Wharry's assessment. *See* [#10-3 at 52-60].

As noted above, the ALJ must first determine whether the treating physician's opinion is entitled to controlling weight. *See, e.g., Watkins*, 350 F.3d at 1300. Here, the ALJ apparently found that the Evaluation was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, but "he did not articulate a reason." *Watkins*, 350 F.3d at 1300. This court concludes the failure to articulate a reason was error.

Furthermore, the ALJ erred in failing to then consider what amount of weight to attribute to Dr. Snodgrass's opinion:

> [a]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.

SSR 96–2p, 1996 WL 374188, at *4. *See also Watkins*, 350 F.3d at 1300. The ALJ did not demonstrate that he considered any of the factors listed in 20 C.F.R. § 416.927(c), and he failed to provide sufficiently specific reasons for affording no weight to Dr. Snodgrass's opinion. And while it appears that the ALJ considered Dr. Wharry's opinion, and may have adopted it in its entirety, he did not explicitly address Dr. Wharry's opinion or explain why he afforded it greater

14

weight.  *See* 20 C.F.R. § 416.927(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…").  The ALJ's preference for Dr. Wharry's opinion does not remedy the failure to fully address the opinion of Dr. Snodgrass. These errors require reversal.  *See Krauser v. Astrue*, 638 F.3d 1324, 1328-29, 1330 (10th Cir. 2011) ("the ALJ simply stopped after the first step [of the two-step analysis], and post-hoc efforts of the Commissioner and the magistrate judge to work through the omitted second step for the ALJ are prohibited…") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (instructing that the reviewing court should not offer new, post-hoc rationales for its decision)).  The court in *Krauser* observed that "the ALJ simply concluded that [the treating physician's opinion]…cannot be given controlling weight and then *said no more about it.*" 638 F.3d at 1331 (emphasis in original) (internal quotation marks omitted).  I respectfully find the same to be true here, and remand for further proceedings. The ALJ's findings with regard to the weight he should afford Dr. Snodgrass's opinion will instruct his treatment of Dr. Wharry's opinion; therefore, I decline to address at this time Plaintiff's arguments regarding the ALJ's assessment of Dr. Wharry's opinion.

### III.     ALJ's RFC Assessment

Ms. Ledbetter also argues that the ALJ erred in failing to account for her mental impairment in his assessment of the RFC.  Defendant responds that the RFC sufficiently incorporates the ALJ's step three findings.

### A.  Applicable Law

The Act provides that an impairment is severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. § 416.921(a). At step two, "[t]he Commissioner follows a special technique to evaluate the severity of mental impairments and their effect on the claimant's ability to work. In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment." *Wells v. Colvin,* 727 F.3d 1061, 1068 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, he or she is found not disabled. 20 C.F.R. 416.920(a)(4)(ii). Where a medically determinable impairment is found, the ALJ proceeds to step three of the disability review process to determine whether the impairments meet or equal a listing in Appendix 1 to subpart P of part 404 and meets the duration requirement. To meet or equal an Appendix 1 listing, the claimant must show that her impairment meets all of the applicable criteria, which is usually some combination of those requirements listed in subparagraphs A, B, and C of the applicable section of Appendix 1. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (affective disorders). The ALJ rates the "degree of functional limitation" caused by the impairment(s) in "four broad functional areas." 20 C.F.R. § 416.920a(c)(3). These areas are (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.[6] *Id.* For the first three areas, the ALJ assigns a rating of none, mild, moderate, marked, or extreme. *Id.* at § 416.920a(c)(4). For the fourth area, the ALJ determines how many

---

[6] These categories are known as "paragraph B" criteria. *See, e.g., Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 , Listing 12.00C).

episodes of decompensation the claimant has had and assigns one of the following ratings: none; one or two; three; or four or more. *Id.* If the claimant is assigned ratings of "none" or "mild" in the first three areas and the ALJ determines she has had no episodes of decompensation, the ALJ "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.* § 416.920a(d)(1).

B.     Application

At step two, the ALJ found that Ms. Ledbetter has a severe impairment of affective disorder. [#10-2 at 14]. At step three, the ALJ concluded that Plaintiff was mildly restricted in activities of daily living and in social functioning and had experienced no episodes of decompensation of extended duration. [#10-2 at 16]. He found that Plaintiff experienced moderate difficulties only with regard to concentration, persistence and pace. [*Id.*] Accordingly, he determined that Plaintiff's mental impairment does not satisfy the "paragraph B" criteria. [*Id.*] The ALJ further found that "paragraph C" criteria were not met because "[t]here is no medically documented history of a chronic affective disorder of at least two years' duration that has caused more than minimal limitations in the claimant's ability to do basic work activities." [*Id.*] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

Having found that Plaintiff suffered from mental impairments, the ALJ was then required to consider those impairments in his assessment of her RFC. 20 C.F.R. § 416.945(a)(1)-(2) (At step four, the ALJ "asses[es] your residual functional capacity based on all the relevant evidence in your case record…including your medically determinable impairments that are not severe."). At step four, the ALJ found that Plaintiff had an RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: "low stress, unskilled work

17

with no frequent or prolonged contact with supervisors, coworkers, or the general public." [#10-2 at 16]. The ALJ found that Plaintiff's mental impairments "could reasonably be expected to produce the claimant's pain or other symptoms," but concluded that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…" [#10-2 at 17]. For support, the ALJ referenced the medical records that observed Plaintiff as "pleasant, alert and oriented with okay mood and good eye contact, intact memory, and a clear, goal directed thought process." [*Id.*] The ALJ further opined that Plaintiff appeared "to be prone to symptoms magnification" and that the records "appear to show possible secondary gain motivation as the claimant was not working and did not want to continue living with her mother and stepfather." [*Id.*]

Plaintiff contends that the RFC does not provide for the ALJ's findings at step three that Plaintiff is moderately impaired with respect to concentration, persistence and pace, specifically on the basis that the limitation in the RFC restricting Plaintiff to no frequent or prolonged contact with supervisors, coworkers, or the general public appears to reflect only her minor social functioning impairment, and, a limitation of unskilled work does not account for specific mental health impairments. [#13 at 30-34; #15 at 12-15]. It is true that "[t]here may be cases in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations." *Vigil*, 805 F.3d at 1204. However, a limitation to unskilled work may alone adequately account for a moderate limitation in concentration, persistence, and pace when the ALJ offers specific findings in support of that limitation. *See Evans v. Colvin*, ---F. A'ppx----, 2016 WL 362438, at *5 (10th Cir. Jan. 29, 2016) ("we held that a limitation to unskilled work adequately accounted for a moderate limitation in concentration, persistence, and pace because the ALJ 'found that the findings of a normal ability to recall items on immediate recall, and an

ability to spell words forward, as well as finding of normal thought processes, indicated that Vigil retained enough memory and concentration to perform at least simple tasks.'") (quoting *Vigil*, 805 F.3d at 1203-04).

I find that the ALJ did not provide sufficient reasons to support that an unskilled work limitation appropriately considered the finding that Plaintiff is moderately impaired in concentration, persistence and pace. Furthermore, were the ALJ to afford greater weight to Dr. Snodgrass's opinion upon remand, he could potentially revise his step three finding regarding whether Plaintiff has an impairment that is equivalent to one of a number of listed impairments. *See* [#10-7 at 219 (noting in the Evaluation that Plaintiff has "marked" difficulty in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods.")]. Accordingly, I remand for further proceedings on this basis as well.

## IV.     Award of Benefits

In deciding whether to order an immediate award of benefits, this court considers how long the matter has been pending and whether remand for additional fact-finding would prove useful or simply delay the inevitable receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)). Relevant to this appeal, Ms. Ledbetter filed for benefits on January 30, 2012. The Appeal Council's denial of benefits precipitating this action occurred on September 18, 2014. [#10-2 at 2]. Plaintiff initiated this action approximately one month later, on October 17, 2014. [#1]. I do not find that the matter has been pending for an exceptional period of time. Furthermore, and for the reasons set forth in this Opinion, I find that additional fact-finding through further administrative proceedings is appropriate

## CONCLUSION

For the reasons set forth herein, the court hereby REVERSES AND REMANDS, for further consideration of the appropriate degree of weight to which the two medical opinions are entitled based on the substantial evidence in the record, the effect, if any, such determinations have on the step three analysis, and for further discussion of Ms. Ledbetter's mental impairments in the RFC assessment.

DATED: March 9, 2016                                    BY THE COURT:

                                                        s/ Nina Y. Wang
                                                        United States Magistrate Judge